IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2001 Session

## BRIAN BOYD v. BILL BERRIER, ET AL.

**Appeal from the Chancery Court for Monroe County**
**No. 12,520    Jerri S. Bryant, Chancellor**

_____FILED JULY 26, 2001_____

_____No. E2000-02546-COA-R3-CV_____

The Plaintiff, Brian Boyd, agreed to purchase three (3) mobile home lots on an installment basis. After nominal down payments he made monthly payments for several months, during which time he received rental income. The contracts provided for forfeiture in the event Mr. Boyd failed to make two (2) consecutive payments or failed to pay the taxes. Mr. Boyd missed four payments, and failed to pay the taxes. He was ordered to quit the property in a detainer action, which was consolidated with a complaint in Chancery for damages for the asserted violation by the assignee of the seller of the Consumer Protection Act. The complaint was dismissed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

John W. Cleveland, Sweetwater, Tennessee, for the appellant, Brian Boyd.

Sharon Frankenberg, Knoxville, Tennessee, for the appellee, Bill Berrier.

James H. Harris, Loudon, Tennessee, for the appellees, Weston Tucker and Mary Louise Tucker.

### OPINION

By contract executed January 14, 1997, the Tuckers agreed to sell to Mr. Boyd two (2) mobile home lots for $15,000.00, payable $200.00 cash down, and $168.28 monthly beginning February 24, 1997, for 180 months with 11 percent interest on the unpaid principal. Upon 180 payments being made, the Tuckers agreed to convey the lots to Mr. Boyd by a general warranty deed. The salient provision of the contract provides:

> "It is expressly understood and agreed that failure upon the part of the
> SECOND PARTY [Boyd], their heirs or assigns to pay two consecutive installments

when due, shall forfeit all rights of the party of the SECOND PART under this contract, and said contract shall become null and void, and the payments received to date of such forfeiture shall be retained by the party of the FIRST PART, his heirs or assigns, as rental for the property, or liquidated damages for breach of contract."

By another contract executed on October 2, 1997, the Tuckers agreed to sell to Mr. Boyd another lot for $22,000.00, payable $200.00 cash down, and $247.87 per month beginning November 2, 1997, for 180 months with 11 percent interest on the unpaid principal. Like the first contract, the second contract provided for the conveyance of the lot by deed upon the payment of the full consideration. It also contained the forfeiture provision.

Each contract provided that Mr. Boyd was liable for and would pay the property taxes beginning with 1997 and that failure to do so would entitle the Tuckers to terminate the contract and retain all payments made thereunder.

On October 15, 1998, the Tuckers executed a paper writing styled "Assignment and Transfer of Interest" purporting to transfer their interest in both contracts to William H. Berrier Jr., and wife Ruth Berrier and Dennis S. Watson and wife Wilma J. Watson.[1]

Mr. Boyd failed to make the required payments in February 1997, April 1998, May 1998 and June 1998. Mr. Berrier filed a detainer action in the General Sessions Court against Mr. Boyd and judgment was entered that he should be restored to the possession of the lots. Mr. Boyd appealed to the Circuit Court.

Thereafter, Mr. Boyd filed the case at Bar in the Chancery Court, and by agreement the cases were consolidated for trial. Mr. Boyd alleged that "Berrier breached the contract and refused to accept payments upon the property" and that Mr. Boyd was entitled to specific performance and to an accounting for "payments made or tendered by the plaintiff." Although Mr. Boyd alleged that the "activity of the defendant constitutes a fraud within the meaning of the Tennessee Consumer Protection Act," he sought no relief pursuant to the Act.

The Chancellor dismissed the complaint, holding that while equity abhors forfeitures, Mr. Boyd breached the contracts by failing to make four payments. The proof is decidedly unclear concerning the amounts paid by Mr. Boyd, or tendered by him. Mr. Berrier testified that he received no payments for April, May, and June 1998, and that the payments subsequently resumed, "the last being made in November 1998." He was then asked:

Q:    Okay, and subsequent to November did you receive any payments, or checks?
A:    Yes, I'd received . . . some from Mr. Tucker.

---

[1]This "Assignment" is remarkably unclear, but the parties treated it as effectively transferring to the Berriers and the Watsons all of the contractual interest of the Tuckers in *both* contracts.

Q:     What did you do with the checks that you received after you considered him in default?
A:     I have them here in my possession.

*  *  *  *  *

Q:     . . . did the contract provide that failure to pay taxes was considered a default?
A:     Yes.
Q:     Did you notify Mr. Boyd that he hadn't paid his taxes and that he needed to do so?
A:     Yes.

## The Issue

Mr. Boyd presents for review the issue of "whether contracts for deed which allow the seller to strictly foreclose without complying with the legal requirements for non-judicial foreclosure violate the Tennessee Consumer Protection Act." Review is *de novo* with a presumption of correctness, with respect to findings of fact, but not as to a question of law. RULE 13(d) T.R.A.P.

## Analysis

We note, at the outset, that Mr. Boyd sought (1) to enjoin Mr. Berrier from coming upon the property, (2) an accounting for payments made or tendered by him, and (3) specific performance. No relief was sought pursuant to the Consumer Protection Act, and the Chancellor was not afforded the opportunity to discuss the issue. Ordinarily, issues not presented upon trial will not be considered on appeal, but in light of the fact that the body of the complaint alleges that the activities of Mr. Berrier constitutes a fraud within the meaning of the Tennessee Consumer Protection Act, we are persuaded that the better part of our appellate endeavor requires us to address the purported issue.

Two of the stated purposes of the Consumer Protection Act are to maintain "ethical standards of dealing between persons engaged in business and the consuming public," and "to protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce." T.C.A. §§ 47-18-102(2) & 4. This language includes those who generally engage in the business of selling real estate as owners or brokers within the scope of the Act. *Ganzevoort v. Russell*, 949 S.W.2d 293 (Tenn. 1997). The defendant, Weston Tucker, is generally engaged in the business of selling real estate as an owner and broker.

The Act prohibits "(r)epresenting that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law," and "(e)ngaging in any other act or practice which is deceptive to the consumer or to any other person." T.C.A. §§ 47-18-104(b)(12) & (27).

The contracts involved here are commonly used in transactions involving nominal down payments for the purchase of property. In legal contemplation they are as lawful as deeds of trust, and involve no deception or unfairness. Mr. Boyd testified to no deceptive or unfair act by any defendant; rather, he attributed his failure to make the required payments to marital difficulties. We find that the Consumer Protection Act is not implicated to any extent.

Mr. Boyd argues that the contracts are used to avoid the time and expense of complying with the requirements of state law for non-judicial foreclosures, citing T.C.A. § 35-5-101, *et seq.,* and T.C.A. § 35-6-101, *et seq.*

T.C.A. § 35-5-101, *et seq.,* is applicable to judicial or trust sales. T.C.A. § 35-6-101, *et seq.,* is the Uniform Principal and Income Act, and has no relevancy to contracts for the sale of real property.

We deduce that the thrust of Mr. Boyd's argument is directed to the alleged forfeiture provisions. Mr. Boyd claims that he had invested about $10,000.00 in property improvements, although he could produce no receipts, invoices, or cancelled checks to support his testimony. He argues that forfeitures are not favored in law or equity, and we agree. But forfeitures pursuant to contract are not illegal *per se,* and will be enforced unless contrary to equity and justice. *See, Hooton v. Nacarato GMC Truck Inc.*, 772 S.W.2d 41 (Tenn. App. 1989). In the case at Bar, the parties agreed that in the event of default all payments made would be retained by the seller as liquidated damages or as rental for the property. *See, Guiliano v. Cleo*, 995 S.W.2d 88 (Tenn. 1999). Although the proof is meager, there is testimony that Mr. Boyd was receiving rent equal to the payments he made.

We are unable to find that the evidence preponderates against the judgment as to findings of fact. As to the question of law, we find that the Consumer Protections Act is not implicated.

The judgment is affirmed and the case is remanded to the Chancery Court for collection of costs below. Costs of appeal are adjudged against Brian Boyd and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE